UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>TRACY LEE THOMAS, a/k/a<br>TREYTON L. THOMAS, a/k/a<br>TRAYTON L. THOMAS, a/k/a<br>TREY THOMAS, a/k/a<br>TRAY THOMAS, a/k/a<br>T.L. THOMAS, and<br>MARBURY ADVISORS INC.,<br><br>Defendants. | Civil Action No. 16-CV-226<br><br>**COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF AND FOR CIVIL MONETARY PENALTIES UNDER THE COMMODITY EXCHANGE ACT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, the United States Commodity Futures Trading Commission ("Commission" or "CFTC"), by its attorneys, alleges as follows:

## I. SUMMARY

1. From at least February 2011 to August 2012 ("Relevant Period"), Defendants Tracy Lee Thomas, a/k/a Treyton L. Thomas, Trayton L. Thomas, Trey Thomas, Tray Thomas and T.L. Thomas ("Thomas"), and Marbury Advisors Inc. ("Marbury"), engaged in a fraudulent scheme by soliciting over $1.2 million from customers by misrepresenting that Defendants would invest in Treasury Bills on their behalf, misrepresenting Defendants' prior investment and trading success, and misrepresenting that Thomas would manage customer funds in a conservative manner; and by not disclosing that Defendants used customers' funds to trade Chicago Mercantile Exchange ("CME") E-mini S&P 500 futures contract ("S&P 500 futures

contracts") and Chicago Board of Trade ("CBOT") 2-Year Treasury Note futures contracts, not disclosing the substantial risk of loss associated with commodity futures trading in which all of customers' funds could be lost, and not disclosing the net losses that Defendants sustained trading commodity futures with customers' funds.

2. By virtue of this conduct and the conduct described herein, Defendants have engaged, are engaging, or are about to engage in fraudulent acts and practices that violate or violated Section 4b(a)(l)(A)-(C) of the Commodity Exchange Act (the "Act"), 7 U.S.C. §§ 6b(a)(l)(A)-(C) (2012).

3. Thomas committed the acts, omissions, and failures described herein within the course and scope of his agency, employment and office with Marbury. Therefore, such acts, omissions, and failures are deemed to be those of Marbury pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Regulation 1.2, 17 C.F.R. § 1.2 (2012).

4. At the same time, Thomas is liable pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012), as a controlling person of Marbury for its violations of the Act and Regulations, because Thomas controlled Marbury and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting Marbury's violations.

5. Accordingly, the CFTC brings this action pursuant to Section 6c of the Act, as amended, 7 U.S.C. § 13a-1 (2012), to permanently enjoin Defendants' unlawful acts and practices and to compel their compliance with the Act and the Regulations. In addition, the Commission seeks remedial ancillary relief, including without limitation, restitution, disgorgement, post-judgment interest, and such other equitable relief as this Court may deem necessary and appropriate, and civil monetary penalties.

6. Unless restrained and enjoined by this Court, Defendants are likely to continue to engage in the acts and practices alleged in this Complaint and in similar acts and practices as more fully described below.

## II. JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, which provides that whenever it shall appear to the CFTC that any person has engaged, is engaging or is about to engage in any act or practice constituting a violation of any provision of the Act or the Regulations, the CFTC may bring an action in the proper district court of the United States against such person to enjoin such practice, or to enforce compliance with the Act and the Regulations.

8. Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), because certain of the transactions, acts, practices, and courses of business alleged herein occurred, are occurring, and/or are about to occur within this District.

## III. PARTIES

9. **U.S. Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with the responsibility for administering and enforcing the provisions of the Act, 7 U.S.C. §§ 1 *et seq.*, and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq*.

10. **Tracy Lee Thomas** resides, based on information and belief, in Charlottesville, Virginia. During the Relevant Period of this Complaint, Thomas was a resident of Naples, Florida. Thomas is a principal and a controlling person of Defendant Marbury Advisors Inc. Thomas has never been registered with the Commission in any capacity.

11.     **Marbury Advisors Inc.** is a corporation that is organized under the laws of the Cayman Islands and has never been registered with the CFTC in any capacity.

## IV.    FACTS

12.     During the Relevant Period, Thomas fraudulently deceived at least two customers, including Thomas' father-in-law, to give Defendants money for the ostensible purpose of investing in "T-Bills" (Treasury Bills), but instead, used their funds to trade commodity futures.

13.     In or around October 2005, Thomas persuaded his late father to give Defendants Marbury and Thomas (as Managing Director of Marbury) financial control over at least one trust account at U.S. Bank (as trustee) under the name N.C. & VA. Warranty Inc. ("NCVA"), a North Carolina corporation owned by Thomas' late father and located in Roxboro, North Carolina. NCVA sold warranty policies for used automobiles and these bank accounts were intended to fund the warranty policies in the event of a claim. Thomas represented to his late father that Thomas and Marbury were successful in investing in Treasury Bills for other customers using an algorithm designed by Thomas and that Thomas and Marbury would invest the money from these bank accounts to obtain safe (non-risky) higher returns.

14.     With the help of an associate, Thomas established a bank account in the Cayman Islands under the Marbury name. Between January 2006 and June 2009, Thomas, through this associate, also opened several trading accounts in Marbury's name at Interactive Brokers ("Interactive"), a registered Futures Commission Merchant located in Greenwich, Connecticut. Thomas maintained trading authority over Marbury's accounts at Interactive. Between at least January 2011 and August 2012, Thomas used one of these Marbury trading accounts (account # U260342) for the purpose of trading commodity futures contracts with customer funds.

15. Between November 2006 and December 2008, Thomas directly wired at least $1.5 million from NCVA's bank account to Marbury account #U260342 at Interactive. These wires were direct deposits from NCVA to Marbury's account even though Thomas represented to Interactive that Marbury had no U.S. customers. Beginning in June 2007, some of these funds were used to trade commodity futures in Marbury's account. Defendants' trading record between November 2006 and December 2010 show they experienced net trading losses in multiple years during this time period, including losses on Treasury Note, S&P 500, and other commodity futures contracts.

16. In or around October 2009, Thomas' late father gave Thomas power-of-attorney over a trust account that NCVA established at Fidelity Bank in Roxboro, North Carolina. Fidelity Bank was appointed trustee of this trust account but the assets were actually held in Marbury's account at Interactive. Thomas represented to his late father and Fidelity Bank that the funds were only being used to invest in safe (non-risky) Treasury Bills. In order to deceive his father and Fidelity Bank, Thomas provided Fidelity Bank several fabricated Interactive account statements that purported to show the funds invested in Treasury Bills/Notes. However, these account statements were false because they concealed the losses in Marbury's account and did not disclose that some of the funds were also used to trade S&P 500 futures contracts as well as other futures contracts. Fidelity Bank discovered the Interactive statements from Thomas were counterfeit in or around June 2012.

17. Between June 2010 and February 2012, Thomas established at least four separate bank accounts at Fidelity Bank under the NCVA name for the benefit of various automobile companies for whom NCVA provided warranties. Thomas had check-signing authority over these bank accounts.

5

18. Between October 2010 and October 2012, Thomas transferred over $245,000 from several NCVA bank accounts at Fidelity Bank to Marbury's bank account in the Cayman Islands where it was commingled with other customer funds and then transferred to Marbury's trading account #U260342 at Interactive.

19. In or around late December 2010 or early January 2011, Defendant Thomas solicited his father-in-law to invest in "T-Bills" (Treasury Bills), with the assurance that Thomas would manage the funds in a conservative manner. Thomas represented to his father-in-law that Defendants had been successful investing "T-Bills" (Treasury Bills) and that the funds would be invested in safe (non-risky) "T-Bills" (Treasury Bills) in Marbury's account. Thomas' father-in-law made the following contributions to Defendants: 2/4/2011 wire transfer for $475,000; 8/10/2011 wire transfer for $104,584; and 8/11/2011 wire transfer for $15,000.

20. In fact, Defendants used the father-in-law's funds to trade Treasury Note and S&P 500 commodity futures contacts. Defendants did not disclose to Thomas' father-in-law that Defendants had been unsuccessful multiple years in Defendants' accounts at Marbury prior to 2011. Defendants did not disclose to Thomas' father-in-law the substantial risk of loss in trading commodity futures in which there is a risk that a customer could lose their entire funds.

21. Between February 4, 2011 and August 11, 2011, Thomas' father-in-law invested a total of approximately $594,000 with Defendants Thomas and Marbury for the purpose of trading "T-Bills" (Treasury Bills). In fact, Defendants had experienced trading losses in commodity futures before the father-in-law's additional contribution, and Defendants had not disclosed those losses to Thomas' father-in-law.

22. During the Relevant Period, Thomas provided his father-in-law fabricated Fidelity Bank account statements that purported to show all the funds were in Treasury Bills or Treasury

6

Notes. However, the father-in-law's contribution was actually in Marbury's commodity futures account at Interactive. Thomas failed to disclose to his father-in-law that he had used the funds to trade commodity futures contracts.

23. In February 2011 and again in August 2011, Thomas transferred his father-in-law's funds from a Fidelity bank account in Roxboro, NC, to Marbury's bank account in the Cayman Islands where it was commingled with other customer funds and ultimately transferred to Marbury's trading account #U260342 at Interactive.

24. Beginning in or around April 2010, Thomas discussed with another prospective customer, S.M., a friend and business colleague of Defendant Thomas's late father, investing in "T-Bills" (Treasury Bills) with Defendants. S.M. owns a car dealership in Clayton, NC, and did business with NCVA. On or about February 14, 2011, Thomas represented to S.M. in an email that he would use S.M.'s funds to conservatively invest in the "T-Bill/Treasury program" and would average 4% profitable returns.

25. Thomas misrepresented to S.M. that Defendants had been successful investing NCVA's money when, in fact, Defendants' had experienced net losses in multiple years prior to 2011 with NCVA's money.

26. Between December 2011 and August 2012, S.M. invested over $595,000 with Defendants Thomas and Marbury on the following dates and in the following amounts:

- 12/13/2011 wire transfer for $10,000;
- 12/31/2011 check for $345,600;
- 2/9/2012 wire transfer for $43,200;
- 3/7/2012 wire transfer for $13,050;
- 4/3/2012 wire transfer for $36,000;
- 5/3/2012 wire transfer for $40,050;
- 6/6/2012 wire transfer for $35,100;
- 7/5/2012 wire transfer for $42,300; and
- 8/3/2012 wire transfer for $30,150.

Thomas wired S.M.'s contributions from an account at Fidelity Bank in Roxboro, NC, to Marbury's bank account in the Cayman Islands where it was commingled with other customer funds, and then transferred to Marbury's trading account #U260342 at Interactive.

27. During the Relevant Period, Defendants used all or most of the customers' funds to trade CME S&P 500 futures contracts and CBOT 2-Year Treasury Note commodity futures contracts in Marbury's account at Interactive. CME and CBOT are CFTC designated contract markets and trading in these futures contracts was on or subject to rules of CME or CBOT, respectively. Defendants did not disclose to S.M. that they had used his funds to trade S&P 500 futures contracts and did not disclose the substantial risk of loss in commodity futures trading. None of the customers had any prior experience investing in commodity futures.

28. During the Relevant Period, Thomas used approximately $1.7 million (including $1.2 million from S.M. and Thomas's father-in-law) to trade commodity futures in Marbury's account #U260342 at Interactive. Defendants experienced net losses of approximately $1.239 million in this account at Interactive, including fees and commissions.

29. Defendants' representations to customers about prior trading and investment success were false because Defendants had net losses in multiple years prior to 2011 and did not disclose those losses to S.M. or the father-in-law. Defendants also did not disclose the substantial risk of loss in commodity futures trading or that customers' funds were used for trading commodity futures contracts. Nor did Defendants disclose to their customers that Defendants had lost all or nearly all of the funds trading commodity futures on their behalf.

# V. VIOLATIONS OF THE COMMODITY EXCHANGE ACT

## Count I

### Violations of Section 4b(a)(1)(A)-(C) of the Act
### (Fraud by Misrepresentations and Omission of Material Facts)

30. The allegations set forth in paragraphs 1 through 29 are re-alleged and are incorporated herein by reference.

31. Section 4b(a)(1)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(1)(A)-(C) (2012) makes it unlawful:

> For any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person . . .
>
> A. to cheat or defraud or attempt to cheat or defraud the other person;
>
> B. willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record;
>
> C. willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract…

32. As set forth above, in or in connection with futures contracts, made, or to be made, for or on behalf of other persons, Thomas willfully and intentionally cheated, defrauded, and deceived customers by a) misrepresenting Defendants' prior investment and trading record and success, b) misrepresenting that Thomas would manage funds in a conservative manner, c) not disclosing that Defendants used their funds to trade CME S&P 500 futures contracts and CBOT 2-Year Treasury Note futures contracts, d) not disclosing the substantial risk of loss associated with commodity futures trading in which all of customers' funds could be lost, and e)

9

not disclosing the losses that Defendants sustained trading commodity futures with customers' funds.

33. Thomas engaged in the acts and practices described above knowingly or with reckless disregard for the truth.

34. By this conduct, Thomas violated Section 4b(a)(1)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(1)(A)-(C).

35. Thomas controlled Marbury, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, Marbury's alleged conduct. Therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012) Thomas is liable for Marbury's violations of Section 4b(a)(1)(A)-(C), 7 U.S.C. §6b(a)(1)(A)-(C).

36. During the Relevant Period, Thomas was an officer, agent, or owner of Marbury acting within the scope of his employment or office. Thus, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and CFTC Regulation 1.2, 17 C.F.R. § 1.2, Marbury is liable for Thomas's violations of Section 4b(a)(1)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(1)(A)-(C).

32. Each misrepresentation or omission of material fact or false report or statement including, but not limited to, those specifically alleged herein, is alleged as a separate and distinct violation of Section 4b(a)(1)(A)-(C) of the Act, 7 U.S.C. §6b(a)(1)(A)-(C).

## VI. RELIEF REQUESTED

**WHEREFORE**, the CFTC respectfully requests that the Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), and pursuant to its own equitable powers, enter:

A. An order finding that Defendants violated Section 4b(a)(1)(A)-(C) of the Act 7 U.S.C. § 6b(a)(1)(A)-(C) (2012).

B. An order of permanent injunction prohibiting Defendants and all persons insofar as they are acting in the capacity of Defendants' agents, servants, employees, successors, assigns, and attorneys, and all persons acting in active concert or participation with Defendants, who receive actual notice of such order by personal service or otherwise, from directly or indirectly:

1. Engaging in conduct that violates Section 4b(a)(1)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(1)(A)-(C);

2. Trading on or subject to the rules of any registered entity, as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40);

3. Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3(yy), 17 C.F.R. § 1.3(yy) (2015)) for Defendants' own personal account or for any account in which they have a direct or indirect interest;

4. Having any commodity interests traded on their behalf;

5. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

6. Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

7. Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2015); and

8. Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2015)), agent or any other officer or employee of any person (as that term is defined in Section 1a(38) of the Act, as amended, 7 U.S.C. § 1a(38)), registered, exempted from registration or required to be registered with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2015).

C. Enter an order directing Defendants, as well as any successors, to disgorge, pursuant to such procedure as the Court may order, all benefits received including, but not limited to, salaries, commissions, loans, fees, revenues and trading profits derived, directly or indirectly, from acts or practices that constitute violations of the Act as described herein, including post-judgment interest thereon from the date of such violations;

D. Enter an order directing Defendants and any successors, to rescind, pursuant to such procedures as the Court may order, all contracts and agreements, whether implied or express, entered into between Defendants and any of their customers whose funds were received by them as a result of the acts and practices which constituted violations of the Act, as described herein;

E. Enter an order requiring Defendants to make full restitution to each and every person or entity whose funds Defendants received or caused another person or entity to receive as a result of acts and practices that constituted violations of the Act, as amended, as described herein, and post-judgment interest thereon from the date of such violations;

F. Enter an order directing Defendants to pay a civil monetary penalty in the amount of (1) the higher of $140,000 for each violation of the Act committed on or after February

12

2011 or (2) triple the monetary gain to Defendants for each violation of the Act described herein, plus post-judgment interest;

G. Enter an order requiring Defendants to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2); and

Such other and further relief as this Court deems necessary and appropriate under the circumstances.

## VII. JURY TRIAL DEMAND

Plaintiff CFTC hereby demands a trial by jury.

Respectfully submitted,

Date: March 22, 2016

**Manal Sultan**
**Deputy Director**
**Commodity Futures Trading Commission**
**Division of Enforcement**

*/s/ Michael R. Berlowitz*
Michael R. Berlowitz
Senior Trial Attorney
(646) 746-9759
Email: mberlowitz@cftc.gov

W. Derek Shakabpa
Senior Trial Attorney
(646) 746-9748
Email: wshakabpa@cftc.gov

David Acevedo
Chief Trial Attorney
(646) 746-9754
Email: dacevedo@cftc.gov

U.S. Commodity Futures Trading Commission
Division of Enforcement
140 Broadway, 19th floor
New York, NY 10005
(646) 746-9898 (fax)